UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES JARRELL,

    Plaintiff,

vs.    Case No. 2:10-cv-622-FtM-29DNF

THE GEO GROUP, INC.,

    Defendant.
_____

**OPINION AND ORDER**

This matter comes before the Court upon review of the Defendant's Motion to Dismiss (Doc. #17, Mot. Dismiss), filed May 24, 2011. Plaintiff filed a Response (Doc. #18, Response) in opposition on June 13, 2011. This matter is ripe for review.

**I.**

James Jarrell, a pro se plaintiff who is civilly detained at the Florida Civil Commitment Center (hereinafter "FCCC"), initiated this action by filing a Civil Rights Complaint (Doc. #1, Complaint) on October 8, 2010, pursuant to 42 U.S.C. § 1983 naming the GEO Group, Inc. (hereinafter "GEO") as the sole Defendant. See Complaint. Plaintiff states that GEO operates the FCCC pursuant to a contract with the Department of Children and Families. Id. at 2. Plaintiff challenges GEO's policy, "both written and unwritten," "that while transporting residents the resident shall remain in the cage without outside intervention." Id. at 2.

According to the Complaint, on or about September 4, 2009, officers transported Plaintiff from a civil trial in Santa Rosa County, Florida, to the FCCC in Desoto County, Florida. Id. at 2. Plaintiff claims that the trip took approximately nine hours, during which time he was handcuffed and shackled with a waist chain and a black box. Id. Plaintiff claims that he is a diabetic and had no access to food or fluid during this nine-hour trip, despite his requests for both. Id. Plaintiff states that he felt he was on the "edge of unconsciousness [sic]" by the end of the transport. Id. Plaintiff further alleges that the black box caused him "extreme pain to the wrists"; he had "agonizing muscle cramps"; and, he had "no means of relieving his bladder." Id. Plaintiff submits that these conditions of his confinement violated his rights under the Fourteenth Amendment and he seeks compensatory and punitive damages. Id.

## II.

In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). Thus, the Court must accept all factual allegations in Plaintiff's Complaint as true and take them in the light most favorable to the plaintiff. Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008). Conclusory allegations, however,

are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1951 (2009)(discussing a 12(b)(6) dismissal); Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

The Court employs the Twombly-Iqbal plausibility standard when reviewing a complaint subject to a motion to dismiss. Randall v. Scott, 610 F.3d 701, 708, n.2 (11th Cir. 2010). A claim is plausible where the plaintiff alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007); Marsh, 268 F.3d at 1036, n.16. Specifically, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citations omitted). Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. Ashcroft, 129 S. Ct. at 1949. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. (citations omitted).

A complaint must satisfy the pleading requirements of Fed. R. Civ. P. 8 by simply giving the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. Conley v. Gibson, 355 U.S. 41 (1957). However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." See Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965, 1968-69 (citations omitted). Additionally, there is no longer a heightened pleading requirement. Randall, 610 F.3d at 701.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh, 268 F.3d at 1059; Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994). A defendant who occupies a supervisory position may not be held liable under a theory of *respondeat superior* in a § 1983 action. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-692 (1978); Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003).

**III.**

Plaintiff filed this action as a civil detainee confined at the FCCC pursuant to the State of Florida's Involuntary Commitment of Sexually Violent Predator's Treatment and Care Act. See generally Fla. Stat. §§ 394.910-.913. As a person who is civilly confined, Plaintiff is in a position analogous to a criminally confined prisoner. See Pullen v. State, 802 So. 2d 1113, 1119 (Fla. 2001) ("the curtailment of the fundamental liberty right is implicated in both criminal proceedings and involuntary civil commitments"). Nevertheless, an individual who has been involuntarily civilly committed has "liberty interests under the due process clause of the Fourteenth Amendment to safety, freedom from bodily restraint, and minimally adequate or reasonable training" as required to ensure safety and freedom from restraint. Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996)(citing Youngberg v. Romeo, 457 U.S. 307, 322 (1982)). Thus, while civilly committed residents at the FCCC are "totally confined" and subject to internal regulations much like those established by the Florida Department of Corrections,[1] they are due a higher standard of care than those who are criminally committed. See Id. Indeed, the Eleventh Circuit Court of Appeals has held that "persons subjected to involuntary civil commitment are entitled to more considerate

---

[1] See Fla. Stat. § 394.912(11).

treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Id.

A criminally confined prisoner, has an Eighth Amendment right to be free from cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 318-19 (1986). As the rights of the involuntarily civilly committed are "at least as extensive as the rights of the criminally institutionalized," actions which would violate the Eighth Amendment rights of a prisoner, would likewise constitute a violation of the due process rights of an individual who was been involuntarily civilly committed. See Dolihite, 74 F.3d at 1041. Indeed, the Eleventh Circuit has recognized that "relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed." Id.; see also Lavendar v. Kearney, 206 F. App'x 860, 863 (11th Cir. 2006).

**IV.**

Defendant GEO moves to dismiss the Complaint on the ground that *respondeat superior* cannot be a basis for liability in a § 1983 action. Mot. Dismiss at 4. Alternatively, Defendant argues that Plaintiff is attempting "to side step the prohibition of *respondeat superior* . . . by alleging the employees of GEO were enforcing both an oral and written transport policy without specifying any details regarding the nature of that policy." Id. at 5. Defendant submits that Plaintiff has failed:

> to put forth any specific allegations as to what GEO's policy was and how it was deficient; failed to establish that GEO personally participated in the allegations; failed to establish an affirmative causal connection between GEO and the alleged constitutional deprivation; failed to allege a history of widespread abuse sufficient to put GEO on notice of the need to correct the alleged deprivation; or failed to allege facts supporting an inference that GEO commanded the subordinates to act unlawfully, or knowing that they would do so failed to stop them.

Id. at 7-8.

In Response, Plaintiff submits that he has alleged that "pursuant to written GEO policy residents must remain in 'the cage' without outside intervention while in transport." Response at 1 (citing Complaint at 3, 14). Plaintiff states that to the extent Defendant requires a citation to a "chapter and verse" of the policy, he is not required to do so at this stage of the pleadings. Id. at 2-3.

**V.**

Title 42 U.S.C. § 1983 imposes liability on one who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that: (1) Defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). Here, Plaintiff alleges a violation

of his Fourteenth Amendment rights stemming from his nine-hour transport shackled, in handcuffs and a black box, without food or fluids, pursuant to GEO's policy, custom, or practice. See Complaint.

The United States Supreme Court has recognized that not every restriction imposed during confinement constitutes "punishment." See Bell v. Wolfish, 441 U.S. 520, 537 (1979). When determining whether a particular restriction amounts to punishment under the Due Process Clause, the court must determine whether the restriction is incident to a legitimate governmental purpose or whether the restriction is imposed as punishment. See Id. at 538. Absent an institution's expressed intent to punish a detainee, this determination "generally will turn on whether there is an alternate purpose rationally connected to the restriction," and whether the restriction appears excessive based on the alternate purpose supporting it. Id. In other words, if a condition or restriction is "reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Id. at 539-40. However, if it "is not reasonably related to a legitimate goal- if it is arbitrary or purposeless- a court may infer that the purpose" is punishment. Id. at 539. Nevertheless, in determining whether restraints are reasonably related to an institution's interest in maintaining security and order, the Court is mindful of the Supreme Court's warning that

> [s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these consideration, courts should ordinarily defer to their expert judgment in such matters.

Id. at 540, n. 23 (citations omitted); see also Enriquez v. Fla. Dep't of Corr., Case No. 2:05-cv-238-FtM-34DNF, 2008 WL 731027 (M.D. Fla. March 18, 2008)(denying in part a motion to dismiss based on allegations that transport of plaintiff in black box despite medical directive that he should not be transported in such manner due to back condition stated a claim).

To state a § 1983 claim against a private entity performing public functions there must be a policy or custom by which the constitutional deprivation was inflicted. Buckner v. Toro, 116 F.3d 450, 452-53 (11th Cir. 1997). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Goebert v. Lee County, 510 F.3d 1312, 1332 (11th Cir. 2007)(citations omitted). A custom is established by showing a persistent or widespread practice and an entity's actual or constructive knowledge of such customs, though the custom need not receive formal approval. Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986). "Normally random acts or isolated incidents are insufficient to establish a custom or policy." Id.

Accepting the facts as true at this stage of the pleadings, Plaintiff, a diabetic who weighs 370 pounds, alleges that he was transported in a "cage" that caused him to be handcuffed, shackled with a waist chain and a black box, was not given any food or fluids, and unable to move, for a nine-hour period of time. Complaint at 2. Plaintiff alleges that due to this method of transportation he experienced "extreme pain," "agonizing muscle cramps," and had no way to relieve his bladder. Id. Plaintiff claims this method of transportation was dictated by GEO policy or custom, which always requires the transportation "of residents in the cage without any outside intervention." Id.; see also Response at 1. Contrary to Defendant's assertion that the Complaint lacks a causal connection, Plaintiff claims that the transportation method is pursuant to GEO policy or custom, thereby establishing a causal connection and a claim against GEO. The Court finds the facts in this case distinguishable from Morales v. GEO Group, Inc., 2:10-cv-601-FTM-36SPC (M.D. Fla. April 19, 2011) and Wean v. GEO Group, Inc., 2:10-cv-628-FTM-29DNF (M.D. Fla. March 14, 2011). Consequently, the Court will allow the parties an opportunity to further develop the facts of this action.

Accordingly, it is hereby

**ORDERED:**

1. Defendant GEO's Motion to Dismiss (Doc. #17) is **DENIED.**

2. Defendant shall file an answer within twenty-one days of this Order.

**DONE AND ORDERED** at Fort Myers, Florida, on this  31st   day of October, 2011.

*John E. Steele*
JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record